To the Clerk of Court,

1:26 mc 0009SAB

Plaintiff Jamie Osuna respectfully submits the enclosed original civil rights complaint for filing in this Court pursuant to 42 U.S.C. § 1983, asserting a Fourteenth Amendment substantive due process (informational privacy) claim.

Plaintiff attempted to schedule an appointment with the law library for e-filing, but was advised that e-filing access is restricted to conditions-of-confinement complaints. This action is not a conditions-of-confinement complaint. Accordingly, Plaintiff submits the original complaint in paper form for filing.

**FILED**

FEB 06 2026

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
       DEPUTY CLERK

**RECEIVED**

FEB 06 2026

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jamie Osuna BD0868<br>PO Box 3476<br>Corcoran, CA 93212,<br>Plaintiff,<br><br>v.<br><br>Gustavo Hernandez, A. Ortiz, A. Diaz. E. Martin, et al,<br>Defendants. | No.<br><br>CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983<br>State Prisoner<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, COMPENSATORY AND PUNITIVE DAMAGES<br><br>Violation of the Fourteenth Amendment Right to Substantive Due Process (Informational Privacy).<br><br>DEMAND FOR JURY TRIAL |

RECEIVED
FEB 06 2026
CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
    DEPUTY CLERK

## I. VENUE & JURISDICTION

1. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to these claims occurred within the Eastern District of California, including at California State Prison–Corcoran ("CSP-Corcoran") in Kings County.

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), and is empowered to grant injunctive, declaratory, punitive, compensatory judgements and reliefs under §§ 2202, 1346, Fed. R. Civ. P. Rule 57, Rule 65.

## II. INTRODUCTION

3. This is a civil rights action under 42 U.S.C. § 1983 arising from the unauthorized public disclosure of Plaintiff's confidential custodial information and information represented as medical in nature by a California Department of Corrections and Rehabilitation ("CDCR") employee, and the subsequent refusal by CDCR officials to take corrective action after receiving actual notice of the disclosure.

4. The information gratuitously disclosed concerned Plaintiff's medical treatment as represented,

1

COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

1  custodial monitoring, housing location and level-of-care while Plaintiff was temporarily
2  confined at Salinas Valley State Prison hospital pursuant to a court order issued after
3  incompetency proceedings. Such information falls within categories addressed by the
4  Fourteenth Amendment, California law, and CDCR regulations—including Title 15, § 3261.2
5  and § 3999.215, Title 2, § 599.960, and Department Operations Manual §§ 13010.11,
6  13030.14, and 13030.23—which govern authorization and restrictions on public disclosure of
7  inmate health and personal information.

5. Various media activities/disclosures were timed to critical court events of Plaintiff's pre-trial capital-eligible charge arising from a CDCR-based incident, and/or protected activities, establishing what Plaintiff alleges is an intentional, malicious pattern.

6. Despite repeated grievances and direct notice to custody, healthcare, and supervisory officials, Defendants failed and refused to mitigate the ongoing violation, mischaracterized the complaint to avoid investigation, and allowed the disclosure to remain publicly accessible.

7. Plaintiff does not bring this action to dispute the truth, accuracy, or medical correctness of any statements made. Plaintiff challenges only the unauthorized disclosure and continued public dissemination of purported confidential information obtained through official access, without lawful authorization or legitimate penological purpose.

8. Whether or not accurate, the information was represented by Defendant HERNANDEZ as confidential medical and custodial information derived from his official access as a CDCR employee; Plaintiff does not place the accuracy of any such information at issue in this action.

### III. EXHAUSTION OF REMEDIES

9. All grievances log numbers provided here were all timely filed and all levels exhausted. All grievance numbers are related to the same issue against the Defendants. For grievance log # 779960, timely filed at all levels, and all available remedies exhausted, Defendant DIAZ screened it out around 8/2/2025. Defendant stated that he received Plaintiff's grievance around 7/24/2025, and Plaintiff had submitted it around 7/23/2025. Defendant DIAZ stated that Plaintiff should have filed this grievance by 8/8/2021, when he believed Plaintiff found out about the adverse action. Plaintiff challenged Defendant DIAZ'S grievance decision by

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

arguing that Plaintiff never mentioned that Defendant HERNANDEZ made the post in 2021 and that Plaintiff was clear in the grievance that Plaintiff barely found out about Defendant HERNANDEZ'S action at the time of the filing of the grievance. Plaintiff had also found that Defendant HERNANDEZ'S adverse action was in 2025 and not made 8/8/2021, as the Defendant asserted; therefore, Plaintiff's grievance was, under CA Title 15, timely filed. Furthermore, Plaintiff could not have filed in 2021 because Plaintiff did not have knowledge of the adverse action in addition to that the adverse action did not exist at that time.

10. The original grievance 776913, CDCR converted to Salinas Valley grievance log # 779960. Related, timely filed, exhausted grievance logs: COR-HC-25000521, 787023.

## IV. PARTIES

**11. Plaintiff**

12. Plaintiff Jamie Osuna is a California state prisoner and was, at all relevant times, in CDCR custody.

**13. Defendants**

14. Defendant GUSTAVO HERNANDEZ was, at all relevant times, a CDCR correctional officer assigned to SVSP, and is sued in his official, individual capacities.

15. Defendant A. ORTIZ was, at all relevant times, a CDCR grievance coordinator, and is sued in his official, individual capacities.

16. Defendant A. DIAZ was, at all relevant times, the Warden of SVSP and responsible for oversight of staff conduct, grievance responses, and enforcement of CDCR confidentiality and misconduct policies, and is sued in his official, individual capacities.

17. Defendant E. MARTIN was, at all relevant times, a Chief Executive Officer or equivalent supervisory official responsible for oversight of healthcare grievance determinations and enforcement of confidentiality obligations, and is sued in his official, individual capacities.

18. Defendants DOES 1–10 are CDCR supervisory, administrative, or grievance officials whose identities are presently unknown, who had notice of the disclosure and failed to take corrective actions and are sued in their individual/official capacities.

## V. FACTUAL ALLEGATIONS

3

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

19. Plaintiff is the sole defendant of a pre-trial, capital eligible case (19CM-1882; 2019), arising from an incident while Plaintiff was in CSP-Corcoran under CDCR custody.

20. In or around 2021, Plaintiff was court-adjudicated as incompetent and temporarily transferred under court order to Salinas Valley State Prison (SVSP) to be restored to competency for that same case.

21. Around July 30, 2025, Plaintiff filed an emergency interlocutory appeal in civil matter *Solares v. Diaz* (E.D. Cal., 2020) arising from the same core incident of 19CM-1882. Plaintiff's appeal opposed the June 2025 blanket waiver of Plaintiff's mental health privileges and subsequently ordered production of his CDCR records for *Solares* where Plaintiff is an unrepresented, unheard third-party.

22. Around this same timeframe, June-August 2025, in Plaintiff's pretrial, capital-eligible case, Plaintiff attempted to file hybrid motions alleging CDCR staff's media leaks that were found to be timed to key court events and documented gratuitous confidential/sealed files dissemination by CDCR officials. Plaintiff, through these motions, sought gags and other remedial actions, and had included verified exhibits of published admissions by self-identified current/former CDCR employees regarding such alleged gratuitous crime scene photos access/dissemination and purported private/confidential information about Plaintiff/19CM-1882. Further, a current SVSP Lt. through a *Solares* filing admitted he disseminated crime scene photos through personal and work emails when he was not part of the investigation and not working in the same facility as the incident. (ECF 73, *Solares v. Burns*, E.D. Cal., 2021.)

23. Around July 2025, Plaintiff found out that there was a publicly accessible social-media post and comment thread about Plaintiff authored by SVSP officer Defendant HERNANDEZ under the account "@jive.turkeyz".

24. As shown in Exhibit A, Defendant HERNANDEZ posted the following comment (including spelling and punctuation as displayed in the capture), publicly and in reference to Plaintiff:

25. *"I met him while working at SVSP. I was assigned to clean his his cell and upon entrance i noticed it was unlike any of the other rooms I had previously cleaned. He a pentagram on the wall along with demons, on his bed he had an entire library of books and esyclapedias. I was*

4

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

*only left with more questions than answers. Aomther thing that stood out to me was the amount of women who would communicate and send pictures to him in joker face paint. His demeanor seemed like nothing more than your average joe and if he didn't have a face full of tattoos you would never assume he was a cold blooded killer. That being said Jamie is being kept under 24 hour surveillance by nurses and officers, and being given psychoactive meds in order to insure that he will be fit to stand trial. We should have faith that the state will do what is right. But only God will decide the final fate of this less than human."*

26. Exhibit A further shows Defendant HERNANDEZ posted an additional comment in the same thread: *"We fight not against flesh and blood."*

27. Plaintiff did not authorize disclosure of this information/purported information, and the disclosure was not permitted by court order, statute, regulation, or any legitimate penological objective.

28. While Plaintiff did not find out until later, Defendant HERNANDEZ had published the posts in or around March 2025, during a continuance in Plaintiff's criminal case (19CM-1882) with the court scheduled to hear a motion to strike the death penalty.

29. The posts were published to an unrestricted public audience and were not limited to law-enforcement, institutional, or authorized purposes. The posts were published to the comment section of a YouTube video on Plaintiff/19CM-1882 that portrayed Plaintiff as a "satanic" or devil-worshipper, "evil", and as guilty and premediated while Plaintiff was/is still pre-trial. The YouTube video featured interviews with multiple former CDCR and correctional employees—including one identified in a herein referenced hybrid motion and its accompanying exhibits for monetizing/disseminating the 19CM-1882 crime scene photos.

30. Around July 23, 2025, Plaintiff filed a grievance, stamped received around July 26, 2025, over Defendant's HERNANDEZ'S referenced posts. Plaintiff informed CDCR—both in writing and orally during grievance processing and interviews, and other interactions / communications—about Defendant HERNANDEZ'S posts. Plaintiff cited CDCR's own regulations and policies prohibiting public disclosure of inmate medical, psychological, and custodial data without written authorization, including but not limited to: DOM §§ 13010.11,

13030.14, and 13030.23; Title 15, §§ 3261.2 and 3999.215; and Title 2, § 599.960. Plaintiff advised staff that no such authorization had been given and that the disclosure was ongoing.

31. Plaintiff read/cited/provided to staff DOM § 13010.11, which limits the information CDCR may release publicly "without a valid written authorization," and Plaintiff further read/cited/provided the DOM's express prohibition that "no person shall disclose any protected health information that identifies an individual without a complete CDCR Form 146-HC," and that "No person shall disclose specific information involving an incarcerated person's medical history ... psychological test results, classification scores ...."

32. Plaintiff also read/cited/provided to staff DOM § 13030.14 ("Conditions of Disclosure"), which requires "prior written, voluntary, and timely consent" for disclosure of personal information and identifies "CDC Form 1021, IPA Voluntary Consent to Release Personal Information," as the required consent mechanism for such disclosure.

33. Plaintiff read and provided to staff DOM § 47120.3 ("[Social Media] Policy") governing employee social media use, which states in relevant part that "Department personnel shall not post or release personnel, contractor, offender, victim, or family private, confidential, sensitive, or other protected information under state or federal law on social media unless explicitly authorized by appropriate departmental authority, regardless of whether the post is made using State-issued equipment or an individual's personal device."

34. Plaintiff's grievance attached Defendant HERNANDEZ'S posts and profile page on which he self-identified as "Gustavo Herndandez" and as a SVSP-based CDCR employee. The grievance was redirected from CSP-Corcoran to SVSP jurisdiction and later investigated/screened out or denied by Defendant DIAZ on the asserted ground that the 2025 post was from "2021". Defendant DIAZ further asserted that Plaintiff knew of the post in 2021 and should have filed his grievance at that time, despite that Plaintiff alleged only recently learning of the post.

35. That asserted "2021" rationale was further contradicted by publicly accessible/visible account information, YouTube video information, and by the platform timestamps displayed on the face of the comment thread.

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

36. As shown in Exhibit B, the "@jive.turkeyz" profile reflects "Joined Oct 22, 2024."
37. The YouTube platform shows the video was published December 2022, which makes it impossible for the above comments under that account to have been authored in 2021.
38. As shown in Exhibit A, a January 2026 capture made for this litigation, the comment thread is displayed by the platform as "11 months ago", further confirming that the publication is not from 2021 and that it remained/remains publicly accessible.
39. Plaintiff appealed the denial decision and explained that the violation was ongoing because the post and comments remained publicly accessible, and that CDCR was required to address staff misconduct and confidentiality violations regardless of any procedural screening/classification of a grievance. Plaintiff emphasized that employees making statements regarding information/purported information on his medications, housing status, inter alia, was inappropriate, especially as Plaintiff had been in a state-hospital setting—that this information was protected and subject to Department, State and Federal privacy laws. Plaintiff also included that he is the defendant in a capital-eligible, pretrial case where such posts could prejudice or taint the jury pool, violating his substantive and due process rights.
40. Around August 12, 2025, Plaintiff filed a grievance log # 787023 over the allowing of Defendant HERNANDEZ'S post to remain online/CDCR having knowledge and taking no action; Plaintiff alleged such refusal to act emboldens other employees to unauthorize access/release private and/or confidential information from Plaintiff's file.
41. Plaintiff next filed a health care grievance COR-HC-25000521. Despite these grievances/appeals and Plaintiff's arguments, Defendant HERNANDEZ'S posts remained online and accessible to the public.
42. On or around October 14, 2025, Defendant ORTIZ interviewed Plaintiff regarding his grievance. Plaintiff explained to Defendant ORTIZ that Plaintiff had been in a mental health hospital at SVSP to be restored to sanity under court order, that Defendant HERNANDEZ did not have authorization to release any information/purported information regarding Plaintiff's medication, medical/mental health treatment, housing, inter alia.
43. Plaintiff informed Defendant ORTIZ about two prior data breaches of Plaintiff's

COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY

file/information—including the (around) April 2019 posting of his photo and level-of-care/housing, and the (around) May 2019 posting of his dental records to online/social media. CDCR had notified Plaintiff in writing about the April and May unauthorized online disclosures and caused those materials to be removed in both incidents. Plaintiff emphasized how Defendant HERNANDEZ'S posts were far worse than these other incidents, and therefore Defendant ORTIZ should act.

44. Plaintiff had been notified that the CSP-Corcoran's Centralized Screening Team (CST), pursuant to CA Title 15 § 3486.1, had determined that Plaintiff's grievance/allegations did not meet the definition as being misconduct against health care staff, and that Plaintiff's grievance was classified as complaining about "rude or unprofessional conduct."

45. Plaintiff argued that the grievance should be a *staff misconduct* complaint and be properly investigated as a data breach and again reiterated the DOM and CA Title 15 sections regarding social media policies and targeting of inmates, health care confidentiality/information confidentiality.

46. On or about October 14, 2025, Defendant MARTIN asserted that the actions of Defendant HERNANDEZ, despite mental/medical information or purported informational disclosure to the public without authorization, was not a health care services issue, that he/they do not have jurisdiction, and informed Plaintiff that Plaintiff does not dictate policy or administrative action.

47. Plaintiff challenged this finding and sent/submitted an inmate request for interview and documentation showing that such unauthorized disclosures and posts must come down as a data breach. Plaintiff had informed Defendant MARTIN regarding the prior CDCR notifications and removals of similar data breaches (e.g. April and May 2019 disclosures) and that those materials were quickly removed from online, to demonstrate that CDCR is able to and does take serious mitigation steps regarding unauthorized disclosure of information/purported information, including removals of material from online and assigning security training.

48. Defendant MARTIN did not reply to Plaintiff.

49. Plaintiff provided Defendants MARTIN, ORTIZ, DIAZ, and Does 1–10 with repeated and documented notice—through grievances, complaints, and other communications—that CDCR had unequally enforced its privacy and information-security protocols, taking mitigation actions in certain cases while failing to act in Plaintiff's. Plaintiff specifically referenced instances in which CDCR directed or facilitated removal of materials in other alleged gratuitous inmate-related disclosures, including actions taken to address content posted by the "LateRelief" Instagram account, allegedly run by a Lancaster CDCR officer. Plaintiff further alleged, consistent with his hybrid motion, that a resigned CDCR lieutenant—who offered/monetized crime scene photographs from Plaintiff's pending criminal case (19CM-1882) on a subscription website—stated during a YouTube Livestream that CSP-Corcoran ISU officers personally contacted him and requested removal of unrelated materials from another inmate's criminal case from his social media. Public statements and disclosures by Defendant HERNANDEZ—including those concerning Plaintiff's mental-health treatment and custodial status—remained publicly accessible, without mitigation or referral, despite Plaintiff's specific notice and request for equal enforcement.

## VI. CLAIMS FOR RELIEF

### CLAIM ONE: Violation of the Fourteenth Amendment, Substantive Due Process (Informational Privacy).

50. At all relevant times, Plaintiff possessed a clearly established constitutional right under the Fourteenth Amendment to informational privacy and confidentiality in highly sensitive, non-public personal information, including medical and mental-health information, custodial status, housing placement, and monitoring level, particularly while housed pursuant to a court-ordered mental-health placement.

51. Defendant HERNANDEZ obtained, accessed, or purported to obtain, access the gratuitously disclosed information through his position as a CDCR employee and through access available only by virtue of his official custodial authority.

52. Defendant HERNANDEZ acted under color of state law when he publicly, gratuitously disseminated or represented as fact confidential custodial and purported medical information

9
**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

1  concerning Plaintiff on a publicly accessible social-media platform.

2  53. The disclosure was not authorized by Plaintiff, not required by any court order, not permitted by statute or regulation, and not justified by any legitimate penological, safety, or institutional objective.

5  54. A reasonable correctional officer in Defendant HERNANDEZ'S position would have known that publicly disseminating such information violated clearly established constitutional rights and CDCR confidentiality obligations. This right was clearly established at the time of the disclosure, including that correctional officers may not publicly disclose an incarcerated person's medical or mental-health information to the general public absent authorization or legitimate penological justification

11 55. Defendant HERNANDEZ publicly, gratuitously disclosed information and/or purported information regarding Plaintiff's mental health treatment, medications, housing status, while Plaintiff was housed in a mental health hospital unit at Salinas Valley State Prison, under court order for incompetency proceedings. Defendant HERNANDEZ made these disclosures in the form of public comments attached to a YouTube video that was inflammatory, derogatory, and asserted Plaintiff's alleged guilt and premeditation as if fact in a pretrial, capital-eligible criminal case, and around the same time that a civil matter sought a blanket waiver of Plaintiff's mental health privilege.

19 56. Defendant HERNANDEZ further emphasized that his access to this information derived directly from his duties and assignments while employed by CDCR, and that he personally encountered Plaintiff in the course of official work at SVSP. Defendant HERNANDEZ actions constituted a significant, unwarranted, and offensive interference into Plaintiff's private affairs—specifically, the disclosure of medical and mental-health-related information, and sensitive information within a mental health treatment ward. These disclosures intruded on information central to Plaintiff's personal dignity and autonomy and were made without any correctional, penological, or administrative justification, and without any lawful informational release or waiver of confidentiality.

28 57. Defendant HERNANDEZ'S disclosures violated Plaintiff's objectively reasonable expectation

of privacy in mental health treatments, prescribed medications, and custodial monitoring, particularly in light of the court-ordered mental-health placement. The disclosure served no legitimate governmental or penological interest and instead exposed Plaintiff's private medical and mental-health information to the general public. These actions constituted a violation of Plaintiff's Fourteenth Amendment right to substantive due process, as applied to the unauthorized public disclosure of highly sensitive medical and mental-health information..

58. After Defendant HERNANDEZ'S public disclosure, Defendants ORTIZ, DIAZ, MARTIN, and DOES 1–10 received actual notice, through grievances, interviews, and supporting documentation, that the disclosure involved publicly posted medical, mental-health, and custodial information attributed to official access, that Plaintiff had not authorized any release, and that CDCR regulations and policies required confidentiality and breach mitigation. In their respective roles, any reasonable official would have understood that the continued public availability of such information constituted an ongoing confidentiality breach requiring corrective action. The obligation to mitigate or remediate such a disclosure was obvious under CDCR policy and practice, including prior removals of similar inmate information, and did not require novel legal interpretation.

59. Each of Defendants ORTIZ, DIAZ, MARTIN, and DOES 1–10 had authority, responsibility, or practical ability within CDCR's grievance, supervisory, or healthcare-oversight systems to initiate referral, mitigation, or corrective action in response to an unauthorized public disclosure of protected inmate information, including steps to cause removal or limitation of continued dissemination.

60. Despite this knowledge and authority, Defendants ORTIZ, DIAZ, MARTIN, and DOES 1–10 deliberately failed or refused to take reasonable steps to investigate, mitigate, or remediate the disclosure, thereby allowing the information to remain publicly accessible and causing a continuing violation of Plaintiff's Fourteenth Amendment right to informational privacy and, to the extent such inaction was intentional, purposeless, and conscience-shocking, substantive due process.

61. As a direct and proximate result of Defendant HERNANDEZ'S public disclosure, Plaintiff

1  suffered: (a) a completed constitutional injury—loss of informational privacy and loss of
2  control over sensitive custodial and medical/mental-health-related information; (b) stigmatic
3  and reputational harm from an apparent government-source disclosure; (c) ongoing exposure
4  and risk of further dissemination because the post remains publicly accessible; and (d)
5  emotional distress with physical manifestations. Plaintiff seeks nominal and punitive damages,
6  and compensatory damages for the constitutional deprivation and other proven non-emotional
7  harms; to the extent Plaintiff seeks damages for mental or emotional injury with physical
8  manifestations, Plaintiff will prove entitlement consistent with 42 U.S.C. § 1997e(e).

9  62. Defendant ORTIZ reclassified Plaintiff's grievance in a manner that improperly and
10  deliberately prevented a staff misconduct investigation from being triggered, despite being on
11  notice that the grievance involved public disclosure or purported disclosure of medical and
12  custodial information. Defendant ORTIZ had the practical authority to refer or cause referral of
13  the matter to the appropriate investigative or compliance channels but failed or refused to do so
14  and deliberately blocked appropriate breach mitigation/referral.

15  63. This reclassification, made with knowledge that the post remained online and publicly
16  accessible, caused the complaint to be processed as a non-serious classification (e.g.,
17  "unprofessional conduct"), thereby frustrating any corrective or investigative process. As a
18  direct result of Defendant ORTIZ'S conduct, the post remained accessible, mitigation was
19  deliberately blocked, and the unauthorized dissemination of Plaintiff's protected information
20  continued. Defendant ORTIZ'S conduct violated Plaintiff's Fourteenth Amendment right to
21  informational privacy, and, to the extent Defendants' conduct was intentional, purposeless, and
22  conscience-shocking, Plaintiff's right to substantive due process.

23  64. Defendant MARTIN, Chief Executive Officer of Health Care Services at the time relevant to
24  this action, was charged with administrative oversight of compliance and patient
25  confidentiality under applicable CDCR regulations. Defendant MARTIN received actual
26  notice of the unauthorized disclosure and was in a position to initiate mitigation or referral
27  consistent with CDCR breach-response policies.

28  65. Despite this duty, Defendant MARTIN deliberately failed to act and refused to take any steps

12

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

to remedy the disclosure. As a direct result of Defendant MARTIN'S conduct, the post remained accessible, mitigation was deliberately blocked, and the unauthorized dissemination of Plaintiff's protected information continued. Defendant MARTIN'S conduct violated Plaintiff's Fourteenth Amendment right to informational privacy, and, to the extent Defendants' conduct was intentional, purposeless, and conscience-shocking, Plaintiff's right to substantive due process.

66. Defendant DIAZ had the authority and responsibility to initiate breach mitigation or staff-misconduct referral. Defendant DIAZ personally reviewed and screened Plaintiff's allegations and supporting evidence but refused to act, instead asserted that the post had been made in 2021 and that Plaintiff's knowledge of it dated from that same time, despite clear evidence to the contrary.

67. As a direct result of Defendant DIAZ'S conduct, mitigation was deliberately blocked, the post remained accessible, and the unauthorized dissemination of Plaintiff's protected information continued. Defendant DIAZ'S conduct violated Plaintiff's Fourteenth Amendment right to informational privacy, and, to the extent Defendants' conduct was intentional, purposeless, and conscience-shocking, Plaintiff's right to substantive due process.

68. Defendants DOES 1–10 owed Plaintiff a duty to properly route, classify, investigate, and process Plaintiff's grievance, but failed or refused to do so. As a direct result of Defendant DOES' conduct, proper mitigation was deliberately blocked, the posts remained accessible, and the unauthorized dissemination of Plaintiff's protected information continued. Defendant DOES' conduct violated Plaintiff's Fourteenth Amendment right to informational privacy, and, to the extent Defendants' conduct was intentional, purposeless, and conscience-shocking, Plaintiff's right to substantive due process.

69. Defendant HERNANDEZ'S public disclosure of Plaintiff's confidential information was the direct and proximate cause of Plaintiff's initial constitutional injury. Defendants ORTIZ, DIAZ, MARTIN, and DOES 1–10's subsequent acts and omissions, including their failure to investigate, mitigate, or remove the disclosure after receiving actual notice, were the direct and proximate cause of Plaintiff's continuing and ongoing injury.

70. Plaintiff suffered a concrete and particularized, actual injury in the form of loss of control over confidential personal information, exposure to stigma and reputational harm arising from purported official disclosures, and a continuing risk of further dissemination to the public.

71. The risk of prejudice, stigma, and irreversible reputational harm was uniquely acute because Plaintiff was, and remains, a pretrial defendant in a capital-eligible criminal proceeding. A reasonable correctional officer in Defendant HERNANDEZ'S position would have known that publicly attributing mental-health treatment, surveillance, and institutional assessments to such a defendant carried an extraordinary risk of irreversible harm.

72. The constitutional violation was complete at the time of disclosure and continued so long as the information remained/remains publicly accessible.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

1. **Nominal damages** against each Defendant for violation of Plaintiff's Fourteenth Amendment right to informational privacy and, in the alternative, substantive due process, under the Fourteenth Amendment;

2. **Compensatory damages** in an amount to be determined at trial, for actual injuries sustained as a result of the unauthorized disclosure and continued public dissemination of Plaintiff's private medical and custodial information, including but not limited to:

    a. Loss of control over confidential information;

    b. Reputational harm and stigma arising from attribution of mental-health treatment and surveillance;

    c. Risk of further dissemination and resulting consequences; and

    d. Other measurable harms not limited to emotional or mental distress;

3. **Punitive damages** against each Defendant for actions taken with malicious intent, callous disregard, or deliberate indifference to Plaintiff's constitutional rights;

4. **Prospective injunctive relief** requiring that:

    a. Defendant HERNANDEZ take reasonable steps within his control to cause the removal of the unauthorized post and any public commentary made by Defendant HERNANDEZ

14

regarding Plaintiff's custodial status or mental-health information;

**b.** CDCR Defendants issue a confidentiality reminder and/or targeted confidentiality directive/training limited to staff involved or to the specific facility/unit, narrowly tailored to prevent unauthorized disclosure of Plaintiff's medical/custodial information;

5. **Declaratory relief** that the conduct described herein violated Plaintiff's constitutional rights under the Fourteenth Amendment;

6. **Costs of suit,** including reasonable litigation expenses and applicable court fees under 28 U.S.C. § 1920;

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

February 2, 2026

*/s/ James Osuna/*

p.p. Jamie Osuna

**EXHIBIT A**

Comment thread by Defendant Gustavo HERNANDEZ under the account "@jive.turkeyz", captured from a publicly accessible YouTube comment thread in January 2026. The comment was accessed via the platform's timestamp/link feature, which displays the referenced comment directly. URL:

https://www.youtube.com/watch?v=kIfHmA6QpMc&lc=Ugy0eJy7Wj0bzBnY5f54AaABAg

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

**@jive.turkeyz** 11 months ago
I met him while working at SVSP. I was assigned to clean his his cell and upon entrance i noticed it was unlike any of the other rooms I had previously cleaned. He a pentagram on the wall along with demons, on his bed he had an entire library of books and esyclapedias. I was only left with more questions than answers.Aomther thing that stood out to me was the amount of women who would communicate and send pictures to him in joker face paint. His demeanor seemed like nothing more than your average joe and if he didn't have a face full of tattoos you would never assume he was a cold blooded killer. That being said Jaime is being kept under 24 hour surveillance by nurses and officers, and being given psychoactive meds in order to insure that he will be fit to stand trial. We should have faith that the state will do what is right. But only God will decide the final fate of this less than human.
Show less

👍 15   👎   Reply

    **@jive.turkeyz** 11 months ago
    We fight not against flesh and blood.

    👍 5   👎   Reply

# EXHIBIT B

YouTube profile page for the account "@jive.turkeyz," displaying the account name "Gustavo Hernandez" on the profile page and the "…more" link pop-up showing the account join date ("Joined Oct 22, 2024"), as displayed by the platform. Captured January 2026. URL: https://www.youtube.com/@jive.turkeyz.

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**



19
**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**